JAR

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 08-40019-JAR |
| ) | |
| **WILLIAM J. BELL,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## MEMORANDUM AND ORDER

Before the Court is defendant William J. Bell's Motion to Dismiss (Doc. 45). The Court has reviewed the briefs and is ready to rule. For the reasons detailed below, defendant's motion is denied.

Defendant moves to dismiss the Indictment on the basis that the carjacking statute 18 U.S.C. § 2119 is unconstitutional, a facial challenge that the statute exceeds Congress' power under the Commerce Clause of the United States Constitution.[1] Defendant acknowledges that there is Tenth Circuit precedent upholding the constitutionality of the carjacking statute.[2] But defendant argues that the Supreme Court's more recent Commerce Clause decision in *Gonzales*

---

[1] Section 2119 provides that "[w]hoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall" be guilty of a crime against the United States.

[2] *See United States v. Overstreet*, 40 F.3d 1090 (10th Cir. 1994); *United States v. Carolina*, 61 F.3d 917, 1995 WL 422862 (10th Cir. 1995)(reaffirming *Overstreet* in light of Supreme Court's decision in *Lopez*); *United States v. Romero*, 122 F.3d 1334 (10th Cir. 1997)(reaffirming *Overstreet* in light of *Lopez*); *United States v. Garcia*, 27 Fed. Appx. 957 (10th Cir. 2001)(affirming the constitutionality of the carjacking statute in the aftermath of the Supreme Court's decision in *Morrison*); *United States v. Moore*, 172 Fed. Appx. 877 (10th Cir. 2006)(rejecting habeas petition challenging constitutionality of carjacking statute because Supreme Court's *Morrison* decision does not represent an intervening change of law).

*v. Raich*[3] has changed the landscape by foreclosing any argument that the carjacking statute is "economic activity that substantially affects interstate commerce," the basis upon which the Tenth Circuit upheld the carjacking statute prior to *Raich*. This Court is not willing to depart from Tenth Circuit precedent because this Court does not believe that *Raich* changed the Commerce Clause jurisprudence as dramatically as defendant suggests. The Tenth Circuit precedent upholding the constitutionality of the carjacking statute in light of the Supreme Court decisions in *Scarborough*,[4] *Lopez*,[5] and *Morrison*,[6] survives in the wake of the Supreme Court's newest decision in *Raich*. And under that precedent, as well as under *Raich*, the carjacking statute is constitutional.

In *Scarborough*, the Supreme Court did not consider the constitutionality of Congress's exercise of the Commerce Clause in enacting the statute that criminalized possession of a firearm by a felon. Rather, the Supreme Court focused on the sufficiency of the nexus between the felon's possession of the firearm and interstate commerce, and found such nexus sufficient in that the statute required "the firearm, have been, at sometime, in interstate commerce."[7]

Eighteen years later, in *Lopez*, the Supreme Court held that Congress exceeded its power under the Commerce Clause in enacting the Gun Free School Zones Act,[8] reiterating that Congress's regulatory power under the Commerce Clause is limited to three broad categories of

---

[3] 545 U.S. 1 (2005).

[4] *Scarborough v. United States,* 431 U.S. 563 (1977).

[5] *United States v. Lopez,* 514 U.S. 549 (1995).

[6] *United States v. Morrison,* 529 U.S. 598 (2000).

[7] *Scarborough*, 431 U.S. at 575.

[8] *Lopez*, 514 U.S. at 551.

activity: (1) regulating the use of the channels of interstate commerce; (2) regulating and protecting the instrumentalities of interstate commerce, or persons or things in interstate commerce; or (3) regulating activities "having a substantial relation to interstate commerce . . . [namely] those activities that substantially affect interstate commerce."[9]  Noting its precedent that certain intrastate activities may nonetheless substantially affect interstate commerce, the Supreme Court found that the Gun Free School Zones Act did not meet this test because possession of a gun is not an economic or commercial activity, nor "an essential part of a larger regulation of economic activity."[10]

       The Court further found that the statute did not contain a jurisdictional element that "would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce."[11]  The Supreme Court noted that although Congress "normally is not required to make formal findings as to the substantial burdens that an activity has on interstate commerce," the absence of any such legislative findings precluded the Court from evaluating the "legislative judgment" to determine whether Congress had a rational basis to believe that the activity in question in fact substantially affected interstate commerce.[12]  The Court went on to reject the government's arguments that possession of a firearm in a school zone might result in violent crime and its attendant societal costs, and that the presence of violent crime deters the willingness of individuals to travel to certain areas perceived to be unsafe.  The Court found that

---

[9] *Id.* at 558-559.

[10] *Id.* at 559-561.

[11] *Id.* at 561.

[12] *Id*. at 562-563.

3

neither the "costs of crime" nor the "national productivity" costs would be a rational basis for Congress' exercise of power under the Commerce Clause. Indeed, the Court posited, what activity could Congress not regulate under those theories.[13]

After *Lopez*, the Tenth Circuit had occasion to revisit the constitutionality of the carjacking statute. First, in *Carolina*,[14] an unpublished opinion in which the Tenth Circuit reaffirmed its pre-*Lopez* holding in *Overstreet*,[15] the court concluded that the carjacking statute was a constitutional exercise of Congress' power to regulate commerce. The Tenth Circuit found that the carjacking statute regulated both things in interstate commerce as well as things substantially affecting interstate commerce in that carjacking: "(1) affected interstate travel and the travel of foreign citizens; (2) related to the sale of stolen cars and parts in interstate commerce; and (3) resulted in higher insurance premiums."[16] This, the Tenth Circuit concluded, brought the carjacking statute within the bounds of regulating both "the channels and instrumentalities of commerce (i.e. the safety of public roads and cars)," and further, the carjacking statute "relate[d] to economic transactions connected to the automobile industry."[17] Two years after its unpublished decision in *Carolina*, in *United States v. Romero*,[18] the Tenth Circuit again rejected a Commerce Clause challenge to the carjacking statute, finding that there is "[n]othing in the Supreme Court's Commerce Clause jurisprudence that convinces us to alter

---

[13] *Id.* at 563-564.

[14] *United States v. Carolina,* 61 F.3d 917, 1995 WL 422862, at *1 (10th Cir. 1995).

[15] *United States v. Overstreet*, 40 F.3d 1090 (10th Cir. 1994).

[16] *Carolina*, 1995 WL 422862, at *1 (citation omitted).

[17] *Id.*

[18] 122 F3d. 1334 (10th Cir. 1997).

4

our decisions in *Overstreet* and *Carolina*."[19]

In 2000, the Supreme Court addressed the scope of Commerce Clause power to regulate activities that substantially affect interstate commerce, the third of the three broad areas of regulation it had previously blessed. In *United States v. Morrison*,[20] the Court held that the Violence Against Women Act (VAWA) exceeded the scope of permissible regulation because the statute, like the statute at issue in *Lopez*, had nothing to do with commerce or economic activity, and noted that "in those cases where we have sustained federal regulation of intrastate activity based upon the activity's substantial effects on interstate commerce, the activity in question has been some sort of economic activity."[21]  In contrast, the carjacking statute involves the act of stealing a vehicle from another person, with violence. Defendant argues that carjacking is a mere crime of violence, beyond the scope of the Commerce Clause which does not convey general police power on Congress. But carjacking is not merely a crime of violence. It is also a property crime. The carjacking statute regulates a violent act of theft, not mere possession of a firearm as in *Lopez*. For that reason, the carjacking statute is within the scope of Commerce Clause power defined by *Lopez* as well as *Morrison*.

Moreover, not only did the statute at issue in *Morrison* not concern economic activity, the Supreme Court noted that it contained no express jurisdictional element that might proscribe the scope of its application, nor any legislative history revealing whether Congress had any rational basis to conclude that the activity at issue substantially affected interstate commerce. The

---

[19]*Id.* at 1339.

[20]529 U.S. 598 (2000).

[21]*Id.* at 610-611.

carjacking statute has a jurisdictional element; the vehicle must have been transported, shipped, or received in interstate or foreign commerce. This is not a limitation that is formulaic. This is not a limitation that has no real import or significance. The jurisdictional element, limiting the reach of this statute to vehicles that have traveled in interstate commerce comports with Congress' expressed concern about the effect stolen vehicles and stolen vehicle parts have on the secondary market for vehicles. That is to say, limiting the scope of this statute to vehicles that have traveled in interstate commerce focuses the regulation on vehicles stolen from the possession of an owner or user of the vehicle, not vehicles still located at their place of manufacture. The carjacking statute was also the product of extensive legislative findings concerning carjacking's effect on interstate commerce. In *United States v. Bishop*,[22] the Third Circuit referenced the extensive legislative history underlying Congress' enactment of the carjacking statute, and the rational basis underlying Congress' determination that the statute was within the scope of their Commerce Clause power.

The statutes at issue in *Lopez* and *Morrison*, also failed in that any connection between the proscribed activity and interstate commerce was attenuated.[23] In *Lopez*, for example, the so-called nexus was that possession of a gun in the proximity of a school, *could* lead to violence which *could* affect the functioning of the national economy through societal costs and burdens on national productivity, arguments roundly rejected by the Supreme Court.[24] But there is not this degree of attenuation present with respect to the activity of carjacking. For carjacking does

---

[22]*See United States v. Bishop*, 66 F.3d 569, 578-583 (3d Cir. 1995).

[23]*See United States v. Lopez,* 514 U.S. 549, 563-568 (1995); *Morrison,* 529 U.S. at 612-613.

[24]*See Morrison,* 529 U.S. at 612-613.

not present the *possibility* of violence, it is violence. At the same time, it is a property crime, and Congress had a rational basis to believe that this violent property crime substantially affects interstate commerce.

Given that the carjacking statute does not suffer from the infirmities the Supreme Court found in the statutes at issue in *Lopez* and *Morrison,* the Tenth Circuit has continued to hold the carjacking statute constitutional in the wake of both *Lopez* and *Morrison*.[25] Defendant argues that *Gonzales v. Raich*[26] changed the Supreme Court's jurisprudence to a degree that forecloses the precedential value of the Tenth Circuit decisions. But nothing in the *Raich* decision would justify that conclusion. In *Raich,* the respondents conceded that the Controlled Substances Act (CSA) was facially constitutional.[27] *Raich* involved an as applied challenge under the Commerce Clause to the Controlled Substances Act, as applied to users and growers of marijuana for medical purposes pursuant to the California Compassionate Use Act.[28]

Defendant focuses on language in the *Raich* decision that rejects the notion that cars are *per se* instrumentalities of interstate commerce and that questions the premise that all methods of transportation and communication are *per se* instrumentalities of commerce. But that language was dicta, for the issue in *Raich* was whether there was a rational basis for Congress to regulate the proscribed activity, growing and using marijuana, as activities that substantially affect

---

[25]*United States v. Garcia*, 27 Fed. Appx. 958, 2001 WL 1632546, at *2 (10th Cir. 2001); *See also United States v. Moore*,172 Fed. Appx. 877, 2006 WL 787804 (10th Cir. 2006), a post-*Raich* decision that does not mention *Raich*, but concludes that *Morrison* did not represent an intervening change of law supporting habeas relief from a conviction under the carjacking statute. *Id*. at * 4.

[26]545 U.S. 1 (2005).

[27]*Id.* at 15.

[28]*Id.*

7

interstate commerce.[29] This dicta in *Raich*, while bringing into question whether vehicles are *per se* instrumentalities of interstate commerce, does not overrule the Tenth Circuit's prior decision in *United States v. Carolina*, that the carjacking statute does regulate the channels and instrumentalities of interstate commerce.[30]

Defendant further argues that *Raich* narrowed the definition of the economic activity that falls within the scope of the third broad category of permissible regulation, activities that substantially affect interstate commerce. In *Raich*, the Court contrasted the non-economic criminal activity at issue in *Lopez* and *Morrison (*possession of a firearm and gender-motivated violence), with the "quintessentially economic" activity in *Raich* (growing marijuana), stating "'[e]conomics' refers to the 'production, distribution, and consumption of commodities.'"[31] But in citing to that definition of economics, the Court was emphasizing that the production of a commodity, even if solely for home consumption, is within the scope of economic activity; the Court was in no way limiting the scope of permissible regulated activity to the production of commodities, as defendant suggests. Indeed, in discussing its Commerce Clause jurisprudence, the Supreme Court cited to cases in which the it had found economic activities that have a substantial effect on interstate commerce, including a variety of activities involving much broader economic activity than the production, distribution and consumption of commodities.

---

[29]*Id.* at 16.

[30]61 F.3d 917, 1995 WL 422862, at *1 (10th Cir. 1995)(carjacking statute affects interstate travel and relates to the sale of stolen vehicles and parts in interstate commerce, which "brings the carjacking statute within those regulations governing the channels and instrumentalities of commerce (i.e. the safety of public roads and cars).").

[31]*Raich*, 545 U.S. at 23-25.

The Supreme Court mentioned such cases as *NLRB v. Jones & Laughlin Steel Corp.*,[32] which proscribed unfair labor practices that burdened or obstructed interstate commerce, and *Perez v. United States*,[33] which proscribed "loan sharking" or the unlawful use of extortionate means to collect payments.[34]

In *Raich*, the Supreme Court found that marijuana is "a fungible commodity for which there is an established, albeit illegal, interstate market."[35] and that "a primary purpose of the CSA is to control the supply and demand of controlled substances in both lawful and unlawful drug markets."[36] Comparing this to its earlier decision in *Wickard*,[37] in which the Court held constitutional the regulations under the Agricultural Adjustment Act's control of the volume of wheat production, the Supreme Court concluded that Congress had a rational basis for believing that "leaving home-consumed marijuana outside federal control would similarly affect price and market conditions."[38] For the same reasons, this Court concludes that Congress had a rational basis to believe that carjacking and the after theft marketing of stolen vehicles and parts would affect supply, demand, price and conditions of the interstate market for vehicles and vehicle parts, thus substantially affecting interstate commerce. The legislative history of the carjacking

---

[32] 301 U.S. 1 (1937).

[33] 402 U.S. 146 (1971).

[34] *Raich*, 545 U.S. at 16-17.

[35] *Id.* at 18.

[36] *Id.* at 19.

[37] *Wickard v. Filburn*, 317 U.S. 111 (1942).

[38] *Raich*, 545 U.S. at 19.

statute certainly resounds with these expressed concerns,[39] and Congress explicitly required that the carjacked vehicle have previously been transported, shipped, or received in interstate or foreign commerce.

In *United States v. Patton*,[40] a post-*Raich* decision, the Tenth Circuit noted the tension between *Scarborough* and its progeny, which rejected challenges to statutes proscribing possession and related activity involving firearms that had traveled in interstate commerce, and the three category approach expounded upon in the *Lopez-Morrison-Raich* trilogy.[41] Finding that the felon in possession of body armor statute did not fit within any of these three categories, the Tenth Circuit nonetheless rejected a Commerce Clause challenge concluding that until the Supreme Court states otherwise, the precedential authority of *Scarborough* survives, such that Congress may continue to "regulate any firearm that has ever traversed state-lines," and by extension any body armor that has similarly crossed state lines."[42]

Moreover, dicta in *Patton* suggests that the carjacking statute passes muster under *Lopez*, *Morrison*, and *Raich*. Assuming carjacking is not commercial or economic activity, *Patton* counsels that the court is to give particular weight to three factors in determining whether there is a substantial effect on interstate commerce: (1) the statutory text, or so-called jurisdictional hook; (2) the articulated congressional understanding; and (3) independent evidence of whether the activity has a substantial and not attenuated effect in the aggregate.[43] Here, as previously

---

[39]*See United States v. Bishop*, 66 F.3d 569, 578-583 (3d Cir. 1995).

[40]451 F.3d 615 (10th Cir. 2006).

[41]*Id.* at 634-636.

[42]*Id.*

[43]*Id.* at 624.

discussed, there is a meaningful jurisdictional hook that limits the reach of the statute, as well as extensive Congressional findings. Moreover, the nexus between carjacking and interstate commerce is substantial and not-attenuated, when one considers that the violent act of carjacking directly affects the legitimate market for used vehicles and vehicle parts. In any event, the Tenth Circuit has also indicated that until the Supreme Court states otherwise, the carjacking statute continues to pass muster under the *Scarborough* line of cases. [44]

**IT IS THEREFORE ORDERED THAT** defendant's Motion to Dismiss (Doc. 45) is denied.

**IT IS SO ORDERED.**

Dated:  February 5, 2009

                                           S/ Julie A. Robinson
                                           JULIE A. ROBINSON
                                           UNITED STATES DISTRICT JUDGE

---

[44] *See Patton*, 451 F.3d at 635 (citing, *inter alia*, *United States v. Bishop*, 66 F.3d 569, 587-88 n. 28 (3d Cir. 1995), which upheld the "carjacking statute because of its jurisdictional hook and noting that until the Supreme Court is more explicit on the relationship between *Lopez* and *Scarborough* a lower court is 'not at liberty to overrule existing Supreme Court precedent.'").